**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ILSA GUZMAN FAJARDO | ) |
| | ) |
| *Petitioner*, | )   Cause No.: _____ |
| | ) |
| | )   Agency No.: A076 706 855 |
| v. | ) |
| | ) |
| William BARR, in his official capacity | ) |
| as the Attorney General of the United States; | )   **VERIFIED PETITION FOR** |
| Kirstjen NIELSEN in her official capacity as | )   **WRIT OF HABEAS CORPUS** |
| Secretary of Homeland Security; | ) |
| Ricardo WONG, in his official capacity | ) |
| as Chicago Field Office Director for U.S. | )   **ORAL ARGUMENT** |
| Immigration and Customs Enforcement; | )   **REQUESTED** |
| Damon ACUFF in his official capacity | ) |
| as Warden of the Pulaski County Detention | ) |
| Center; and the U.S. DEPARTMENT OF | ) |
| HOMELAND SECURITY, | ) |
| | ) |
| *Respondents*. | ) |

## VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER 28 U.S.C. §§ 1331 and 2241

1.     Petitioner, Ilsa GUZMAN FAJARDO, brings this verified petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241; the All Writs Act, 28 U.S.C. § 1651; and Article I, Section 9, Clause 2 of the United States Constitution (Suspension Clause) to remedy her unlawful detention by the Respondents. Subject matter jurisdiction is based upon 28 U.S.C. § 2241.

2.     This is a verified petition ("Petition") for habeas corpus challenging the unlawful detention of an alien who has been ordered removed *in absentia* from the United States but has not been physically removed from the United States.

3.     Mrs. Guzman Fajardo's abrupt immigration detention and her imminent removal violate, and would violate, the Immigration and Nationality Act and its regulations, the

1

Administrative Procedures Act ("APA"), and the U.S. Constitution's Due Process guarantee. Unless habeas relief or immediate injunctive relief is granted, a mother and wife of U.S. citizens, and member of the community with no criminal history, faces removal and continued detention away from her family and life in the United States.

4.      Pursuant to this Court's inherent powers in habeas corpus proceedings, Mrs. Guzman Fajardo respectfully requests this Court order her released from custody, enjoin Respondents from removing her from the St. Louis area, and stay her removal from the United States pending resolution of her Petition for habeas corpus.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241; 28 U.S.C. § 1331; Article I, § 9, cl. 2 of the United States Constitution; the All Writs Act, 28 U.S.C. § 1651; the Administrative Procedure Act, 5 U.S.C § 701; and for injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Petitioner's current detention as enforced by Respondents constitutes a "severe restraint[]on [Petitioner's] individual liberty," such that Petitioner is "in custody in violation of the . . . laws . . . of the United States." *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241.

6.      While the courts of appeals have jurisdiction to review removal orders directly through petitions for review, *see* 8 U.S.C. § 1252(a)(1), (b), the federal district courts have jurisdiction under 28 U.S.C. § 2241(d) to hear habeas claims by non-citizens challenging the lawfulness or constitutionality of Immigration and Customs Enforcement ("ICE") conduct. *See, e.g., Demore v. Kim*, 538 U.S. 510, 516–517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). *Joseph v. Lynch*, 793 F.3d 739, 741–42 (7th Cir. 2015); *Fuller v. Sessions*, 879 F.3d 265, 268 (7th Cir. 2018).

2

7.     Venue is proper in the Southern District of Illinois under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District.  Petitioner is being detained at the Pulaski County Detention Center in Ullin, Illinois. Venue is proper in this district, because the facility in which the Petitioner is being detained is within the territorial jurisdiction of this Court.

8.     As the Constitution states, "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the Public Safety may require it." *See* U.S. Const. art. I, § 9 cl. 2. The writ is the "fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson*, 394 U.S. 286, 291 (1969). "The scope and flexibility of the writ – its capacity to reach all manner of illegal detention – its ability to cut through barriers of form and procedural mazes – have always been emphasized and jealously guarded by courts and lawmakers." *Id.* Hence, "the very nature of the writ demands that it be administered with the initiative and *flexibility* essential to insure the miscarriages of justice within its reach are surfaced and corrected." *Id.* (emphasis added).

9.     Because of the vital role the writ plays in our democracy, and since the petitioner is often in custody, "usually handicapped in developing the evidence needed to support in necessary detail the facts alleged in [a] petition," the Supreme Court has repeatedly recognized that "a habeas corpus proceeding must *not* be allowed to flounder in a 'procedural morass'" *Price v. Johnston*, 334 U.S. 266, 269 (1948).  Indeed, "[t]here is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law." *Harris*, 394 U.S. at 291-292.

10.     Mrs. Guzman Fajardo, who is currently being detained by Respondents, properly files this habeas corpus petition in the Southern District of Illinois, the district where the events relevant to the petition occurred, and the Attorney General, DHS Secretary and ICE Field Office each have custody over Petitioner and can do *all things necessary* to bring this proceeding to a final adjudication.

11.     The U.S. Code contains a few key sections that govern the threshold questions.

12.     ***First***, a petition for a writ of habeas corpus may be brought by anyone "in *custody in violation of the Constitution or laws or treaties of the United States.*" 28 U.S.C. § 2241(c)(3) (*emphasis added*).[1] It is not disputed that Mrs. Guzman Fajardo is in Respondents' custody.

13.     ***Second***, the district courts are limited to granting habeas relief "*within* their respective jurisdictions." 28 USC § 2241(a) (*emphasis added*). This Court can direct the Respondents detaining the Petitioner within this jurisdiction at 1026 Shawnee College Road, Ullin, Illinois to grant the requested relief.

14.     ***Third***, "[t]he writ … shall be directed to the *person having custody* of the persons detained." 28 U.S.C. § 2243 (*emphasis added*). All decisions concerning Mrs. Guzman Fajardo's custody and possible removal have been, and will be made, within the jurisdiction of this Court.

15.     Respondents are subject to the personal jurisdiction of the Southern District of Illinois because they each can properly be reached by service of process in Illinois. This Court therefore will be able to grant Mrs. Guzman Fajardo's requested relief because Respondents are "within [its] respective jurisdiction[]." 28 USC § 2241(a).

## PARTIES

---

[1]     The explicit authority to grant writs of habeas corpus was given to the federal courts in the Judiciary Act of 1789 § 14, 1 Stat. 73, 81-82. *See Felker v. Turpin*, 518 U.S. 651, 661 (1996) (describing this provision of the Judiciary Act of 1789 as the direct ancestor of the current 28 U.S.C. § 2241).

16.     Petitioner, Mrs. Guzman Fajardo, is a 48-year-old long time resident of St. Louis, Missouri.  Mrs. Guzman Fajardo is currently in the custody of the Respondents.  She is the mother and wife of U.S. citizens. She has a I-130 immediate relative petition pending.

17.     Petitioner is being detained by ICE and, upon information and belief, is to be removed from the country imminently.

18.     Respondent William Barr is named in his official capacity as the Attorney General of the United States. In this capacity, he is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review. Respondent Barr routinely transacts business in the Southern District of Illinois, is legally responsible for administering Petitioner's removal proceedings and the standards used in those proceedings, and, as such, is a legal custodian of Petitioner. Respondent Barr's address is Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

19.     Respondent Kirstjen Nielsen is named in her official capacity as Secretary of the United States Department of Homeland Security. In this capacity, she is responsible for the administration of the immigration laws. Respondent Nielsen supervises Mr. Wong. Respondent Nielsen, as the Secretary for Homeland Security, has authority over all components of DHS. These Respondents exercise power and authority over aliens on a nationwide basis and are the custodians of Petitioner. Respondent Nielsen's address is Secretary of Homeland Security, U.S. Department of Homeland Security, Washington, D.C. 20528.

20.     Respondent Ricardo Wong is named in his official capacity as the Field Office Director of the Chicago ICE Office of Enforcement and Removal Operations within the DHS. In this capacity, he is responsible for the administration of immigration laws and the execution of detention and removal determinations and is a legal custodian of Petitioner. Respondent Wong's

address is Office of Enforcement and Removal Operations, Chicago Field Office, 101 W Ida B Wells Drive, Suite 4000, Chicago, Illinois, 60605.

21.     Respondent Damon Acuff is named in his official capacity as the Warden of the Pulaski County Detention Center in Ullin, Illinois. In this capacity, he is responsible for the administration of the detention facility where Petitioner is being detained and is a legal custodian of Petitioner. Respondent Acuff's address 1026 Shawnee College Road, Ullin, Illinois 62992.

22.     Respondent DHS is the federal agency responsible for enforcing Petitioner's continued detention pending her removal proceedings. DHS's address is U.S. Department of Homeland Security, Washington, D.C. 20528.

## EXHAUSTION OF REMEDIES

23.     Petitioner recognizes that habeas relief normally requires exhaustion of remedies . However, exhaustion is not required if: (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an "indefinite timeframe for administrative action"; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised. *Iddir v. I.N.S.*, 301 F.3d 492, 498 (7th Cir. 2002). All four circumstances are present in this case. Further, exhaustion may be excused if "the interest of the individual in retaining prompt access to a federal judicial forum [outweighs] countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan,* 503 U.S. 140, 146 (1992); *Bowen v. City of New York,* 476 U.S. 467, 483, (1986); *Mathews v. Diaz,* 426 U.S. 67, 76 (1976); *Gibson v. Berryhill,* 411 U.S. 564, 575 n. 14 (1973); *Houghton v. Shafer,* 392 U.S. 639, 640 (1968); *McNeese v. Board of Ed. for Community School Dist.,* 187, 373 U.S. 668, 675 (1963).

24.     No exhaustion requirement applies to the constitutional claims raised in this Petition because federal courts have carved out an exception to the exhaustion requirement for constitutional challenges to the immigration laws given that the immigration courts have no jurisdiction to review such claims. *See, e.g., Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994)

25.     In making that discretionary decision, the Court should consider the urgency of the need for immediate review. "Where a person is detained by executive order . . . the need for collateral review is most pressing. . . . In this context the need for habeas corpus is more urgent." *Boumediene v. Bush,* 553 U.S. 723, 783 (2008) (waiving administrative exhaustion for executive detainees).

## STATEMENT OF FACTS

26.     Ms. Guzman Fajardo has lived in the United States for almost 20 years. *See* Exh. A, Notice to Appear. She is married to Steven Miller, a U.S citizen. *See* Exh. B, Marriage Certificate.

27.     Immigration and Naturalization Service ("INS") apprehended Petitioner on November 2, 1999, at or near San Ysidoro, California. *See* Exh. A. INS is the legacy predecessor agency to ICE for the purpose of all actions described within this Petition.

28.     The next day, INS served Petitioner with a Notice to Appear ("NTA") detailing allegations and charges of removability for Petitioner. Notably, the NTA did not list a specific time and date for Petitioner to appear for her immigration court hearing. Rather, the NTA listed the date of Petitioner's immigration court hearing as "a date to be set" and the time of the hearing as "a time to be set." *Id.*

7

29.     After serving Petitioner with the NTA, INS released her from custody. *See* Exh. C, Order of Immigration Judge Denying Alien's First Motion to Reopen, dated December 13, 2018 at 1.

30.     On information and belief, it was the policy of INS, and is still the policy of ICE, to only release an alien from custody upon documenting a specific address that the alien will reside at upon release.

31.     However, in the instant case, INS released Petitioner even though Petitioner only provided that she would be residing in "Miami, Florida." *See* Exh. C, Order of Immigration Judge Denying Alien's First Motion to Reopen, dated December 13, 2018 at 1.

32.     Subsequently, INS filed the NTA with the San Diego Immigration Court. However, INS never provided the immigration court with Petitioner's address because INS did not have her address. Specifically, "(o)n, January 19, 2000, a staff assistant for the San Diego Immigration Court certified in writing that a 'review of the central address file indicates that no address has been received relative to this [respondent] to date.' (Certification Regarding Address Check, Jan. 19, 2000.)" *Id*. at 2.

33.     Even though the immigration court clerk certified that the immigration court did not have Petitioner's address and had not served Petitioner with notice of her next hearing date, the immigration court held a master calendar hearing seven days later (on January 26, 2000) where the immigration court order Petitioner removed *in absentia* to Honduras. *Id*.

34.     The immigration court not only did not serve Petitioner with her notice of hearing, but also never served Petitioner with a copy of her *in absentia* order of removal because the court never had Petitioner's address.

8

35.     In 2014, ICE apprehended Petitioner. Upon apprehension, ICE informed Petitioner of the *in absentia* order of removal. ICE then released Petitioner from custody on an Order of Supervision. *See* Exh. D, Order of Supervision. Since that time, Petitioner has dutifully reported to ICE and has worn an ankle bracelet.

36.     On June 16, 2018, Petitioner married a U.S. citizen. On August 7, 2018, Petitioner's U.S. citizen spouse filed an I-130, Petition for Alien Relative, on behalf of Petitioner. *See* Exh. E, I-130 Receipt Notice. The I-130 is currently pending before U.S. Citizenship and Immigration Services ("USCIS"). However, according to the USCIS case processing times website, USCIS is currently adjudicating I-130s filed on or before May 14, 2018. *See* https://egov.uscis.gov/processing-times/

37.     On October 25, 2018, Respondent's previous counsel filed a Motion to Reopen ("MTR #1") with the San Diego Immigration Court.

38.     On December 13, 2018, Immigration Judge Jeffrey Romig denied MTR #1. *See* Exh. B.

39.     On January 28, 2019, the United States Court of Appeals for the Ninth Circuit issued its decision in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019). Because Petitioner's immigration case was heard in San Diego and must be reopened by the San Diego immigration court, *Karingithi* is controlling for this matter.

40.     On February 12, 2019, Petitioner reported to the ICE Enforcement and Removal Office to check in under her Order of Supervision. Petitioner had done this many times earlier without incident.

41.     On that day without any prior notice nor changes in Petitioner's case or criminal history, ICE took Petitioner into custody.

9

42.     The Respondents have offered neither an explanation nor justification for Mrs. Guzman Fajardo's detention on February 12, 2019.

## LEGAL FRAMEWORK

### A.  Right to Due Process

43.     It is well established that the Fifth Amendment entitles aliens to due process of. Law[.]'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id.* at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against unlawful or arbitrary personal restraint or detention.").

44.     Due process therefore requires "adequate procedural protections" to ensure that the government's asserted justification for its conduct infringing on protected interests "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* at 690 (internal quotation marks omitted). In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention—to mitigate the risks of danger to the community and to prevent flight. *Id.*; *Demore*, 538 U.S. at 528.

45.     Other than as punishment for a crime, due process permits the government to take away liberty only "in certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (quotations omitted). Such special justification exists only where a restraint on liberty bears a "reasonable relation" to permissible purposes. *Jackson* v. *Indiana*, 406 U.S. 715, 738 (1972); *see also Foucha* v. *Louisiana*, 504 U.S. 71, 79 (1992);

*Zadvydas*, 533 U.S. at 690. In the immigration context, those purposes are "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (quotations omitted).

46.     Those substantive limitations on detention are closely intertwined with procedural due process protections. *Foucha*, 504 U.S. 78-80. Noncitizens have a right to adequate procedures to determine whether their detention in fact serves the purposes of ensuring their appearance or protecting the community. *Id.* at 79; *Zadvydas*, 533 U.S. 692; *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 949 (9th Cir. 2008). Where laws and regulations fail to provide such procedures, the habeas court must assess whether the noncitizen's immigration detention is reasonably related to the purposes of ensuring her appearance or protecting the community. *Zadvydas*, 533 U.S. at 699.

47.     Failing to properly notify an alien of his or her immigration proceeding is an additional due process violation. In *Karingithi*, the Ninth Circuit directly addressed "whether the Immigration Court has jurisdiction over removal proceedings when the initial notice to appear does not specify the time and date of the proceedings, but later notices of hearing include that information." *Id.* at 1158.

48.     The Ninth Circuit found that the filing "a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings ... *so long as a notice of hearing specifying this information is later sent to the alien.*" *Id.* at 1161 (citing *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 442-444 (BIA 2018)) (emphasis added).

49.     In *Karingithi*, the Ninth Circuit found that the requirement that the Notice to Appear have a specified time and date was not a requirement for the NTA to vest jurisdiction in an

11

immigration court. *Id.* at 1159. In doing so, the Ninth Circuit also adopted the *Bermudez-Cota* holding that when an NTA lacks a specific time and date, that issue can be resolved with a *subsequent* notice of hearing from the immigration court with proper notice of time and date. *Id.* at 1161 *citing Bermudez-Cota* at 447.

50.     The United States Supreme Court questioned the validity of NTAs that lack a specific time and date. *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). The Immigration and Nationality Act permits the Attorney General, through the immigration judges in the Executive Office of Immigration Review, to cancel the removal of a non-citizen, like Mrs. Guzman Fajardo, who "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [an] application" for cancellation of removal." 8 U.S.C. § 1229b(b). Under the so-called stop-time rule, a period of "continuous physical presence" ends when a noncitizen is served a "notice to appear." § 1229b(d)(1)(A).

51.     In *Pereira*, the Supreme Court found that an NTA that did not include a specific time and date did invoke the stop-time rule. *Pereira* at 2116.

52.     The courts are divided on the scope of *Pereira*. Some courts applied *Pereira*'s holding to all putative notices to appear, regardless of whether the case at hand implicated the stop-time rule. *See, e.g., United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164 (E.D. Wash. 2018); *United States v. Lopez-Urgel,* 351 F. Supp. 3d 978 (W.D. Tex. 2018); *United States v. Cruz-Jimenez,* No. A-17-CR-00063-SS, 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018); *United States v. Ramos-Delcid,* No. 3:18-CR-00020, 2018 WL 5833081 (W.D. Va. Nov. 7, 2018); *United States v. Virgen-Ponce,* 320 F. Supp. 3d 1164 (E.D. Wash. 2018); *United States v. Pedroza-Rocha,* No. EP-18-CR-1286-DB, 2018 F. Supp. 3d 1164 (E.D. Wash. 2018); *United States v. Pedroza-Rocha,* No. EP-18-CR-1286-DB, 2018 WL 6629649 (W.D. Tex. Sept. 21, 2018); *United States v. Anorve-*

*Lopez*, No. CR 18-00201-TUC-JGZ, 2018 U.S. Dist. LEXIS 172956, (D. Ariz. Sept. 25, 2018).

Others have concluded that the *Pereira* holding applies only to circumstances involving the

calculation of the stop-time rule. *See, e.g., Karingithi; see also United States v. Roberto Arroyo*,

No. 18-cr-02049-*DCG, 2018 WL 6729029, at \*11 (W.D. Tex. Dec. 21, 2018)* (*Pereira* should be

narrowly applied only in stop-time rule cases).

 *53.*  In *Bermudez-Cota*, the Board of Immigration Appeals agreed with the Supreme

Court's analysis that an NTA that lacks a specific time and date did invoke the stop-time rule was

deficient for notice purposes, but did not invalidate the entire immigration court proceeding as

long as the immigration court cured the defect by subsequently giving notice of the time and date

of hearing to the alien. *Bermudez-Cota* at 445.

 54.  The Board extensively cited the Ninth Circuit decision in *Popa v. Holder*, 571 F.3d

890 (9th Cir. 2009):

> The Ninth Circuit observed that, "[a]lthough [section 239](a)(1)(G)(i) requires a
> notice to appear to 'specify[]' the time and place at which the proceedings will be
> held, this court has never held that the [notice to appear] cannot state that the time
> and place of the proceedings **will be set at a future time by the Immigration
> Court**." *Popa.*at 895. The court stated that it had ""silently . . . adopted the rule that
> the time and date of a removal proceeding can be sent **after** the first notice to
> appear" in the form of a notice of hearing. *Id.* After reviewing 8 C.F.R. § 1003.18
> and cases from other circuits approving of this **two-step notice procedure**, the
> court in *Popa* made this rule explicit, holding that "a Notice to Appear that fails to
> include the date and time of an alien's deportation hearing, but that states that a date
> and time will be set later, is not defective [under section 239(a)(1)(G)(i)] **so long
> as a notice of the hearing is in fact later sent to the alien**." *Id.* at 895-96 (citing
> *Gomez-Palacios v. Holder*, 560 F.3d 354, 359 (5th Cir. 2009); *Dababneh v.
> Gonzales*, 471 F.3d 806, 809-10 (7th Cir. 2006); *Haider v. Gonzales*, 438 F.3d 902,
> 907 (8th Cir. 2006)).

*Bermudez-Cota* at 445-446. (emphasis added).

 55.  In the instant case, the Petitioner never received a subsequent notice before ordering

the Petitioner removed *in absentia*; neither ICE nor the immigration court ever sent any notice to

the Petitioner before ordering the Petitioner removed *in absentia*; and the two-step notice procedure as required by *Bermudez-Cota* and *Popa* was never invoked.

56.    As a result, neither ICE nor the immigration court ever cured the defect in the NTA, jurisdiction never vested, and Petitioner's *in absentia* order of removal is invalid and unconstitutional for lack of jurisdiction and notice. Accordingly, Respondents' current detention of Petitioner is unconstitutional.

**B. Eligibility for Cancellation of Removal in Light of *Pereira***

57.    Because Petitioner was not properly served, her order of removal should be invalidated.

58.    Since the order of removal is invalid, Petitioner's case is identical to *Pereira*.

59.    Because the NTA served on the Petitioner lacked a specific time and date, the NTA did not invoke the stop-time rule. As a result, Petitioner has been in the United States for more than 10 years before being served with a valid NTA, and Petitioner is eligible to file for cancellation of removal pursuant to 8 U.S.C. § 1229b(b).

60.    Respondents illegal detention and attempt to remove Petitioner is an effort to prevent her from pursuing a form of relief that would result in Petitioner obtaining legal status as a lawful permanent resident.

**C. Provisional Waiver Process**

61.    The INA does not condemn individuals who live in the United States unlawfully and under final orders of removal to permanent separation from their U.S. citizen spouses and children. Instead, it allows these individuals, if otherwise eligible, to leave the U.S. temporarily and return as lawful permanent residents—if they are granted waivers of applicable inadmissibility grounds under 8 U.S.C. § 1182(a).

62.     In addition to cancellation of removal, Petitioner is also eligible for and is pursuing adjustment of status to a lawful permanent resident through a provisional waiver process.

63.     Specifically, § 1182(a)(9)(A)(iii) allows an individual who departed under an order of removal to avoid a 10-year bar on admission by obtaining the "consent[]" of the Attorney General. And, § 1182(a)(9)(B)(v) allows an individual who lived in the United States unlawfully for more than a year to avoid a similar 10-year bar by demonstrating that a denial of admission would cause "extreme hardship" to a U.S. citizen spouse or parent.

64.     Recognizing that requiring a noncitizen to await the adjudication of these waivers overseas would create precisely the "extreme hardship" that the waiver of unlawful presence is designed to avoid, in 2013 and 2016, the Department of Homeland Security promulgated regulations which permit individuals like Mrs. Guzman Fajardo to apply for waivers of inadmissibility in advance of departing the United States to obtain lawful status at a U.S. embassy abroad. Prior to 2013, individuals married to U.S. citizens and seeking waivers of inadmissibility, based on the hardship their absence from the United Sattes will cause to their U.S.-citizen relatives, were required to wait outside the country for adjudication of those waivers. That often requires an absence of over a year. Recognizing the hardship this imposed on families, DHS created a special process for eligible individuals to seek inadmissibility waivers inside the U.S. prior to departing. *Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Final Rule*, 78 Fed. Reg. 535, 536 (Jan. 3, 2013). In 2016, USCIS expanded this program to include individuals like Mrs. Guzman Fajardo, who have final orders of removal. *Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule*, 81 Fed. Reg. 50244, 50245 (July 29, 2016).

15

65.     These regulations thus allow an otherwise eligible individual who is married to a U.S. citizen—and who lives in the United States unlawfully and with a final order of removal—to demonstrate the bona fide nature of her marriage, prove her eligibility for required waivers, depart the country briefly to complete processing of an immigrant visa application at a U.S. consulate, and then return to the United States to rejoin her family as a lawful permanent resident.

66.     The process permits an individual like Mrs. Guzman Fajardo to obtain waivers of inadmissibility which will ultimately limit the amount of time she has to spend outside the U.S. and separated from her family while consular processing.

67.     The first step in the process of seeking waivers of inadmissibility in the U.S. is the submission of an I-130 application. Mrs. Guzman Fajardo's husband has taken this step and the family's application remains pending.

68.     Due process protects a noncitizen's liberty interest in the adjudication of applications for relief and benefits made available under the immigration laws. *See Arevalo* v. *Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (recognizing protected interests in the "right to seek relief" even when there is no "right to the relief itself"). Petitioner has a protected due process interest in her ability to apply for provisional waivers and ultimately for legal permanent resident status.

69.     The APA forbids agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A court reviewing agency action "must assess . . . whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment"; it must "examin[e] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

16

70.    Interpreted in light of the Constitution, the INA and its applicable regulations do not permit abrupt detention while an individual is engaged in the process of attempting to regularize her immigration status and without any determination that she poses a danger or flight risk. The INA makes detention mandatory only during the "removal period" — a 90-day period that began when Petitioner's order of removal became final and expired on April 25, 2000.  *See* 8 U.S.C. § 1231(a)(1). After the 90-day period, detention is permissible only in certain circumstances, upon notice to the noncitizen and after an individualized determination of dangerousness and flight risk. *See* 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.4(d), (f), (h) & (k).

## CLAIMS FOR RELIEF

### COUNT I: Petitioner's Detention Violates
### Due Process Under the U.S. Constitution

71.    Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

72.    Petitioner was detained without any determination that she poses a danger or flight risk.

73.    Further, Petitioner did not receive proper notice of her immigration hearing as required by precedential Ninth Circuit law.

74.    Further, Respondents allowed Petitioner's hearing to going forward when Respondents had actual knowledge that Petitioner had not been served and, in fact, Respondent never made any attempt to serve her, resulting in Respondent's *in absentia* order of removal.

75.    Petitioner's detention therefore violates the Due Process Clause of the U.S. Constitution.

### COUNT II: Petitioner's Detention Violates
### the INA and Applicable Regulations

17

76.     Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

77.     Petitioner's detention, months after she began applying for her permanent resident status – without any notice or opportunity to present argument or evidence, or any individualized determination that she poses a flight risk or danger, based solely on an outstanding order of removal that she is seeking to address – violates the INA and its regulations.

## COUNT III: Petitioner's Removal Violates
### the INA and Applicable Regulations

78.     Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

79.     The Department of Homeland Security's regulations interpret the INA to permit an individual who requires waivers under 8 U.S.C. § 1182(a)(9)(A)(iii) and (B)(v) to obtain conditional, advance approval of these waivers before she departs the U.S. to complete the immigrant visa process. *See* 8 C.F.R. §§ 212.2(j) & 212.7(e); Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule, 81 Fed. Reg. 50244, 50245 (July 29, 2016).

80.     These regulations thus allow an otherwise eligible individual who is married to a U.S. citizen—and who lives in the United States unlawfully and with a final order of removal—to demonstrate the bona fide nature of her marriage, prove her eligibility for required waivers, depart the country briefly to complete processing of an immigrant visa application at a U.S. consulate, and then return to the United States to rejoin her family as a lawful permanent resident.

81.     Petitioner was abruptly detained by ICE without any notice while she was complying with her Order of Supervision requirements. ICE's frantic efforts to remove Petitioner

without allowing her the to follow these provisional waiver procedures violates the INA and applicable regulations.

82.     Petitioner also challenges her underlying order of removal in light of the Ninth Circuit's recent opinion in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019). Removal in this context violates the INA and the applicable regulations.

**COUNT IV: Petitioner's Removal Violates
Due Process Under the U.S. Constitution**

83.     Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

84.     Due process protects a noncitizen's liberty interest in the adjudication of applications for relief and benefits made available under the immigration laws. "It is well-settled that foreign persons in the United States are entitled to due process." *Kerciku v. I.N.S.,* 314 F.3d 913, 917 (7th Cir. 2003) *citing Zadvydas v. Davis,* 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Ambati v. Reno,* 233 F.3d 1054, 1061 (7th Cir.2000). Petitioner has a protected due process interest in her ability to apply for provisional waivers and ultimately for legal permanent resident status.

85.     Any efforts by Respondents to remove Petitioner, without allowing her to avail herself of the procedures created by the INA and its regulations, violate and would violate due process.

**COUNT V: Petitioner's Detention and Removal
Violates the Administrative Procedures Act, 5 U.S.C. §706(2)**

86.     Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

19

87.     Under the Administrative Procedures Act, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. The reviewing court "shall…hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (E).  A court reviewing agency action "must assess . . . whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment"; it must "examin[e] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

88.     Petitioner's detention and any efforts to remove Petitioner under the facts alleged here and while seeking to avail herself of the provisional waiver process created under the INA, are and would be arbitrary and capricious under the APA.

89.     The APA also sets forth rule-making procedures that agencies must follow before adopting substantive rules. *See* 5 U.S.C. § 553. The Department of Homeland Security followed these rulemaking procedures to establish the provisional waiver process for the unlawful presence waiver, *see* 78 Fed. Reg. 536, and to expand the availability of that waiver to noncitizens living with final orders of removal, *see* 81 Fed. Reg. 50244.

90.     ICE's sudden decision to prohibit some noncitizens with final orders of removal from pursuing the process created by these regulations—a prohibition accomplished in this case by detaining and attempting to remove Petitioner in the midst of her efforts to legalize her status—improperly alters these substantive rules without notice-and-comment rulemaking, in violation of the APA.

91.     The Respondents' actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" 5 U.S.C. §706(2)(C) and "in excess of statutory jurisdiction, authority or limitations, or short of statutory right." 5 U.S.C. §706(2)(C).

## REQUEST FOR ORAL ARGUMENT

Petitioner respectfully requests oral argument on this Petition.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1.     Assume jurisdiction over this matter;

2.     Order Petitioner's release from custody;

3.     Enjoin Respondents from moving the Petitioner from the St. Louis area while habeas proceedings are pending;

4.     Issue a Writ of Habeas Corpus ordering Petitioner's release from immigration detention pending final resolution of this habeas proceeding;

5.     In the alternative, issue a Writ of Habeas Corpus and order Petitioner's release within 10 days unless Respondents schedule a hearing before a neutral immigration judge to provide Mrs. Guzman Fajardo a constitutionally adequate process to challenge her detention and the validity of the underlying *in absentia* order of Removal in light of *Karingithi*;

6.     Issue a declaration that Petitioner's ongoing detention violates the Due Process Clause, the INA, and the APA;

7.     Award Petitioner her costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. §2412, or other statutes;

8.     Grant such further relief as the Court deems just and proper.

Date: March 1, 2019                                   Respectfully submitted,

KHAZAELI WYRSCH LLC

/s/ James R. Wyrsch
James R. Wyrsch
Javad Khazaeli (Admission Pending)
911 Washington Avenue, Suite 211
Saint Louis, MO 63101
(314) 288-0777
(314) 400-7701 (fax)
james.wyrsch@kwlawstl.com
javad.khazaeli@kwlawstl.com

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have discussed with the Petitioner's legal team the events described in this Petition and reviewed her corroborating documentation. On the basis of those discussions, on information and belief, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: March 1, 2019                                    /s/ Javad Khazaeli
                                                        Counsel for Petitioner

23